**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

BRIAN STEWART,               )
                                )
             Plaintiff,     )
                                )
          v.               )     Case No. 1:21-cv-01509-TWP-MKK
                                )
JOHNSON COUNTY,      )
MATRON HAMILTON,     )
                                )
            Defendants.    )
                                )
JOHNSON COUNTY,      )
                                )
            Third Party Plaintiff,   )
                                )
          v.               )
                                )
ADVANCED CORRECTIONAL HEALTH,  )
INC.,[1]                  )
                                )
            Third Party     )
            Defendant.

**ORDER GRANTING JOHNSON COUNTY DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AS TO FEDERAL CLAIMS, RELINQUISHING SUPPLEMENTAL JURISDICTION OVER STATE CLAIMS, AND DENYING WITHOUT PREJUDICE ADVANCED CORRECTIONAL HEALTHCARE'S MOTION FOR SUMMARY JUDGMENT AND ORDER TO SHOW CAUSE**

This matter is before the Court on Third Party Defendant Advanced Correctional Healthcare, Inc.'s ("ACH") Motion for Summary Judgment (Dkt. 65), and a Motion for Summary Judgment (Dkt 67) and Motion to Limit Expert Testimony (Dkt. 88) filed by Defendants Johnson County and Matron Hamilton (collectively "Johnson County Defendants").  In his Amended Complaint Plaintiff Brian Stewart ("Stewart") alleges that Johnson County and Johnson County Jail Matron Abby Hamilton ("Matron Hamilton") violated his constitutional rights and were negligent when his crutches and medical boot were confiscated during his detention at the Johnson

---

[1] Third Party Defendant's name is Advanced Correctional Healthcare, Inc. (*see generally*, Dkt 34).

County Jail ("the Jail"). Johnson County Defendants filed a third-party Complaint against ACH, the medical company with whom Johnson County contracted to provide medical services at the Jail. For the reasons explained below, Johnson County Defendants' Motion for Summary Judgment is **granted** with respect to all federal constitutional claims, and the Court relinquishes supplemental jurisdiction over the state law negligence claim. ACH's Motion for Summary Judgment is **denied as moot** with respect to any liability over the federal claims and **denied without prejudice** with respect to the remaining state law negligence and indemnification claims.

Additionally, because the Court has reason to believe that Stewart deliberately presented evidence to this Court that he knew to be untrue, he and his counsel, Paul J. Cummings, are **ordered to show cause** why they should not be sanctioned pursuant to Federal Rule of Civil Procedure 11.

## I.    BACKGROUND

### A.    Procedural Background

On January 19, 2022, Stewart filed an Amended Complaint for Damages and Demand for Trial by Jury. (Dkt. 31.) In an Amended Order Granting in Part and Denying in Part Partial Motion for Judgment on the Pleadings ("Order for Judgment on the Pleadings"), (Dkt. 61), the Court summarized the allegations as follows:

> Stewart was a pretrial detainee in the Johnson County Jail from June 8, 2019 through August 2019. Before his incarceration, he fractured his ankle and underwent surgery. His doctor prescribed medical equipment—specifically a medical boot and crutches—to help his recovery. While at the Johnson County Jail, Stewart was "denied his necessary medical equipment for a fractured ankle and surgically placed hardware, as prescribed by his treating physician, due to Defendants' policies, procedures and/or customs, and the actions of individuals acting under color of state law in deliberate indifference to his known medical needs," (Dkt. 31 at ¶ 12), despite the Defendants' actual knowledge that he had recently undergone surgery, (Dkt. 31 at ¶ 16).
>
> Stewart suffered injuries due to the Defendants' "policies or customs regarding the hiring, training and supervision of their officers, physicians, medical providers and

staff." *Id.* at ¶ 24. Additionally, Matron Hamilton denied Stewart's numerous requests for his boot and crutches. *Id.* at ¶ 13.

Dkt. 61 at 2-3.

After some claims were dismissed as a result of the Order for Judgment on the Pleadings, the claims that remained were: (1) Fourth and Fourteenth Amendment claims against Matron Hamilton and (2) *Monell* and state law negligence claims against Johnson County. (Dkt. 61.)

On January 21, 2022, the Court granted Johnson County Defendants' motion for leave to file a third-party complaint against ACH pursuant to Federal Rule of Civil Procedure 14. (Dkt. 33.) In that complaint, Johnson County Defendants seek indemnification from any loss or damage, including reasonable attorney's fees and other costs of litigation, if it was determined that the losses were "solely caused or necessitated by the negligent, reckless, intentional, or deliberately indifferent conduct of ACH or its employees, which is related to medical treatment or care provided by ACH[.]" (Dkt. 34 at 3, ¶ 11.)

**B.** **Factual Background**

Because Defendants have moved for summary judgment under Rule 56(a), the Court views and recites the evidence "in the light most favorable to the non-moving party and draw[s] all reasonable inferences in Stewart's favor." *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009) (citation omitted).

**1.** **Medical Equipment and Care Policies at the Johnson County Jail**

The Jail has never had a policy of denying inmates medical equipment. (Dkt. 68-4 at 2, ¶ 7.) At all times relevant to Stewart's Amended Complaint, the Jail contracted with ACH for the provision of medical care to inmates. *Id.* at 2, ¶ 8.

ACH does not have any policies, protocols or procedures related to how their medical providers treat patients, but rather ACH expects providers to provide medical treatment that is

appropriate based on the specific circumstances and the provider's medical judgment. (Dkt. 66-1 at 2, ¶ 3.) There was no ACH policy in place at the Jail that prevented a specific type of medical treatment, medical equipment, or medication. *Id.* at 2, ¶ 4. Jail staff do not dictate whether an ACH provider can prescribe certain medical equipment. *Id.* at 2, ¶ 5. If Jail staff have concerns about medical equipment, they can relay their concerns to medical staff. *Id.* Ultimately, the provider prescribes the medical equipment he or she believes is necessary and appropriate based on the specific circumstances and the provider's own medical judgment. *Id.*

The Jail has a written policy regarding the placement of inmates in segregation. (Dkt. 70-4.) The policy lists property and hygiene items that an inmate "may possess" while segregated. *Id.* at 2. The list includes items such as soap, baby powder, a pencil, deodorant, mattress, jail uniform, toothpaste, toothbrush. *Id.* The policy does not state that these are the *only* items the inmate may possess, and it omits items that an inmate would likely be allowed to possess, such as toilet paper and prescribed medication. *See id.*

### 2. **Stewart's Injury**

Stewart was severely injured in a truck accident on February 16, 2019. (Dkt. 68-2 at 3 (14).)[2] As a result of the accident, he had surgery on his right ankle during which a surgeon placed locking plates and screws into his ankle. (Dkt. 94 at 2−5.) After surgery, Stewart was instructed to be non-weightbearing for a minimum of six weeks and then he would be transferred to a removable medical boot. *Id.* at 3. Stewart had several follow-up visits with his doctors and around March 11, 2019, was placed in a medical boot with no restrictions to range of motion exercises,

---

[2] The Court will cite to excerpts of Mr. Stewart's deposition by first providing the page of the PDF and then the page number of the deposition in parentheses. *See* Dkt. 68-2 (Johnson County Defendants' Excerpts of Mr. Stewart's Deposition) and dkt. 70-1 (Mr. Stewart's Excerpts of the Deposition). For all other records, the Court will cite to the page number of the PDF of the exhibit.

was instructed to remain non-weightbearing, and was given an ACE bandage to decrease swelling. *Id.* at 7–9.

On April 15, 2019, Stewart had a follow-up appointment at Eskenazi Hospital Orthopedics. *Id.* at 10. X-rays were taken, and medical staff noted that they "explained that the medial malleolus screw is broken," that the doctors "would not recommend surgery for this," and that they "would recommend continued nonoperative management, with expectation that the medial malleolus will heal." *Id.*[3] Stewart's doctors determined that they "would like to advance his weightbearing status at this time to weightbearing as tolerated. He should transition from 2 crutches to 1 crutch to a regular shoe in graduated fashion." *Id.* A month later, the doctors ordered x-rays due to a concern for delayed healing of Stewart's ankle. *Id.* at 12. The x-rays demonstrated that a fibular plate had fractured. *Id.* at 19.

### 3.   <u>Stewart's Incarceration</u>

On June 8, 2019, Stewart was arrested and booked into the Jail. (Dkt. 68-2 at 5 (49).) After being processed, he was placed in general population with his crutches and boot. *Id.* at 5–6 (49–50). He was released from the Jail on June 11, 2019. *Id.* at 6–7 (50–51).

Stewart was again arrested and booked into the Jail on June 21, 2019. *Id.* at 10 (55). When he was being processed, he had an intake with medical staff at which he "caught them up to speed about [his] ankle issues and what surgeries [he had] been having, medications, appointments." *Id.* at 11 (57). He was again placed in general population with his boot and crutches. *Id.*

On June 26, 2019, Stewart got into a fight with another inmate. *Id.* The inmate initiated the fight by threatening him, so Stewart hit him. *Id.* at 13 (59). The encounter between the two

---

[3] In his affidavit, Mr. Stewart "dispute[s] the accuracy of those records" because "[p]rior to [his] incarceration, [he] had never been told that the hardware in [his] ankle had failed." (Dkt. 70-2 at ¶¶ 23–24.) The Court will address this statement later in this Order.

lasted about five seconds before jail staff came and restrained Stewart. *Id.* As officers forcefully restrained Stewart, he felt a "pop" in his calf and informed the officers about it. (Dkt. 70-1 at 45 (62).)

Stewart was examined by ACH medical staff immediately after the fight. (Dkt. 68-4 at 4.) He told the provider that his tooth had been knocked out, but an assessment showed the tooth remained in place, and he was advised to rinse his mouth out with water. *Id.* No other injuries were noted, nor is there any notation concerning his boot and crutches. *Id.*

Stewart's memory of his treatment differs from the medical records. At his deposition, he testified that it was at this encounter that unnamed Jail staff took his boot and crutches away from him. (Dkt. 70-1 at 46 (63).) Stewart testified, "They told me that I can't have my boot or crutches and they gave me an [ACE] bandage. The jail officers did that." *Id.* He then clarified that a doctor gave him the ACE bandage because, after jail staff said he could not have the boot or crutches, it "[k]ind of felt like his hands may have been tied and he was offering it as a substitute." (Dkt. 70-1 at 72 (102).)

Stewart wrote his first grievance on June 26, 2019, stating that "officers denied medical requests for right leg and used medical cell as punishment." (Dkt. 70-3 at 1.) Matron Hamilton responded on June 28, 2019 stating "Mr. Stewart, I have asked medical to add you to the list today to be seen." *Id.*

Medical records indicate that Stewart was seen by a nurse on June 28, 2019, based on a referral from Matron Hamilton. (Dkt. 68-4 at 5.) The nurse noted that Stewart was wearing his medical boot on his right foot and had an unsteady gait. *Id.* Due to concerns that he may have suffered a head injury during the fight, Stewart was moved to a different unit for observation. *Id.* The nurse contacted the doctor, who had no additional orders. *Id.*

6

Stewart was again seen by medical staff on July 2, 2019, where he complained of foot and leg pain. *Id.* at 6. He requested an ACE bandage for nighttime, and the nurse contacted the doctor who approved an order for the bandage for two weeks. *Id*. Dr. Frank Lloyd saw Stewart on July 3, 2019. *Id.* at 7. At this visit, Stewart reported that his ankle fracture was not healing. *Id.* Dr. Lloyd observed a limited range of motion and recommended that Stewart receive a referral to an outside orthopedist. *Id*.

Stewart attested that approximately two weeks after the fight—which would have been around July 10, 2019—he was moved to the second floor of the Jail and placed in segregation. (Dkt. 70-2 at 3, ¶ 14.) While there, he was required to go up and down stairs on his injured leg without the use of his boot and crutches. *Id.* at 3, ¶ 15. Navigating the stairs without these devices increased the pain in his ankle. *Id.* at 4, ¶ 25. One day when he was in the shower, officers came into his cell and took his ACE bandage, stating the bandage was "considered contraband and not allowed in segregation." *Id.* at 3, ¶ 16.

Stewart wrote his second grievance on July 11, 2019, the copy of which is mostly illegible. (Dkt. 70-3 at 2.) A few words and phrases—"hardware" and "from the deputies jumping on me knocking my teeth out on 6-26-19"—indicate it is related to his medical care after the June 26, 2019 fight. *Id*. Matron Hamilton responded, "This must be addressed with medical. I have forwarded to them for review. Only the doctor can order." *Id*.

Dr. Lloyd requested and received information from Community Health, including x-ray findings, and concluded on July 12, 2019 that the referral to an outside doctor was not necessary and instead medical staff should continue to monitor Stewart's ankle. (Dkt. 68-4 at 8.) Stewart was seen at the medical office on July 17, 2019. *Id.* at 9. The notes from that encounter state,

"Chart reviewed with MD Lloyd. New order received to DC[4] boot and DC ACE bandage. Pt may be released from holding." *Id.*

On July 20, 2019, Stewart submitted his third grievance in which he requested his "air cast back and to be put in medical block." (Dkt. 70-3 at 3.)[5] Matron Hamilton responded four days later, stating, "You need to see medical in reference to any medical concerns/request. Please complete a sick call with them to address concerns." *Id.*

Stewart submitted his fourth grievance on July 25, 2019, which stated,

Matron Hamilton per request sent on 7-20 your response on 7-24. In reference response I have spoken with the Dr and "nurses" about this. They already have prior ex-rays [sic] just to catch you up to speed. The medical treatment is borderline negligent as far as response time also taking my cast off & just putting me in open population screams negligence. The ball is in their court your so called "medical" [illegible].

*Id.* at 4. Two days later, Matron Hamilton responded,

I forwarded your 7/24/19 request response for your 7/20/19 request to medical to address. Only the doctor can approve further treatment[,] air cast, etc. We do not have an actual medical block. Normally, individuals are housed up front in HD-tanks if urgent medical concerns & others A-Block Admin-Seg for overflow depending on circumstances.

*Id.*

Stewart submitted a fifth grievance on July 28, 2019, in which he stated,

In response to request date 7/25/ 7-26 states that my visibly fractured leg *& broken screws* doesn't require my aircast w/ boot & HD Block? But does require me to be housed in admin seg (upper level!) requiring me to navigate stairs w/ no crutch & no cast daily[.] Please clarify as to why I get to endure punishment when I started in HD?

---

[4] The Court takes judicial notice that "DC" may stand for "discontinue" in the medical context. *See* MedicineNet, "Common Medical Abbreviations and Terms" https://www.medicinenet.com/common_medical_abbreviations_and_terms/article.htm (last medically reviewed on Mar. 8, 2022).

[5] Mr. Stewart clarified during his deposition that at all times when he referred to his "cast" he was talking about his walking boot. (Dkt. 70-1 at 69 (99).)

(Dkt. 68-4 at 16 (emphasis added).)[6]  On August 2, 2019, Matron Hamilton responded, "According to our records you are back in an HD tank." *Id.*

Stewart filed his sixth and final grievance on July 30, 2019, in which he requested to see his medical records regarding his x-rays and "to have my air cast & crutches back."  (Dkt. 70-3 at 5.) Matron Hamilton responded on August 2, 2019, "You need to request this with medical. They can go over this with you. You can review copies of your records. You just cannot obtain them without a court order." *Id.*

Stewart saw a nurse on August 5, 2019.  (Dkt. 68-4 at 10.)  She recorded the following in her notes:

> Pt states he is upset with where he is being housed as he has a recently healed broken leg. Pt states they took [off] his cast and 'moved him to admin seg'. Pt states it hurts him to walk up and down the stairs. Pt's R ankle is swollen. . . . Pt informed that medical does not control where the inmate is housed. Nor do we have anything to do with admin seg. Pt verbalized understanding.

(Dkt. 68-4 at 10.)  The notes also indicate that the doctor was informed of Stewart's complaints, and he was provided an ice pack three times a day.  *Id.*

In total, Matron Hamilton received six grievance forms between June and July 2019 regarding Stewart's medical care, and she responded to each request by forwarding the request to medical staff, responding to his request, or by directing Stewart to submit the appropriate "sick call" paperwork directly to medical staff.  (Dkt. 68-4 at 2, ¶ 11; Dkt. 70-3.)  Matron Hamilton attested that she was not involved in assessing or treating Stewart's ankle while he was incarcerated at the Jail.  (Dkt. 68-4 at 2, ¶ 12.)  Rather, she relied on ACH staff's assessment, medical judgment, and decisions as the contract medical provider, including the determination as to whether Stewart needed medical equipment for his ankle.  *Id.*

---

[6] The Court observes that Mr. Stewart did not include this grievance in his exhibit at Docket 70-3, which included the other five grievances.  This glaring omission will be discussed later in this Order.

Stewart was released from the Jail on August 7, 2019 and walked to the emergency room of Johnson Memorial Health Hospital which was located a short distance from the Jail. (Dkt. 68-2 at 19 (71).)  He was wearing his boot but did not have his crutches.  *Id.* at 20 (72).  At the hospital, an x-ray was taken which showed "a broken screw in the medial malleolus without signs of healing." (Dkt. 70-5.)[7]  He was advised to call his surgeon or orthopedist to follow up. *Id.*

After his release from the Jail, Stewart required surgery to remove the damaged hardware and insert new hardware and had another surgery to remove the new hardware.  (Dkt. 70-2 at 3, ¶¶ 21−2.)

### III.  <u>Standard of Review</u>

Parties in a civil dispute may move for summary judgment, which is a way of resolving a case short of a trial.  *See* Fed. R. Civ. P. 56(a).  Summary judgment is appropriate when there is no genuine dispute as to any of the material facts, and the moving party is entitled to judgment as a matter of law. *Id.*; *Pack v. Middlebury Comm. Sch.*, 990 F.3d 1013, 1017 (7th Cir. 2021). A "genuine dispute" exists when a reasonable factfinder could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Material facts" are those that might affect the outcome of the suit. *Id.*

When reviewing a motion for summary judgment, the court views the record and draws all reasonable inferences from it in the light most favorable to the nonmoving party.  *Khungar v. Access Cmty. Health Network*, 985 F.3d 565, 572-73 (7th Cir. 2021).  It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-

---

[7] Mr. Stewart testified that a doctor at the emergency room told him that he was "not surprised given what happened to [him] in the jail." (Dkt. 70-2 at 3, ¶ 19.)  The Court does not consider this statement, which is inadmissible hearsay. *Kirk v. Maassen*, 2022 WL 10225305, *3 (7th Cir. Oct. 18, 2022) (unpublished) (affirming exclusion of non-defendant cardiologist's statement that the plaintiff's heart had blockages that were removed during a procedure: "A litigant may not rely on inadmissible hearsay to avoid summary judgment.") (citing *Anderson v. City of Rockford*, 932 F.3d 494, 509 (7th Cir. 2019)).

finder. *Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014). But the non-moving party "may not rest upon mere allegations in the pleadings or upon conclusory statements in affidavits; he must go beyond the pleadings and support his contentions with proper documentary evidence. It is well-settled that speculation may not be used to manufacture a genuine issue of fact." *Weaver v. Champion Petfoods USA Inc.*, 3 F.4th 927, 934 (7th Cir. 2021) (cleaned up).

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). "[T]he burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id*. at 325.

## IV.  DISCUSSION

### A.  Fourteenth Amendment Claims against Matron Hamilton

Although Stewart brought his claims under the Fourth and Fourteenth Amendments, his individual claims against Matron Hamilton fall under the Fourteenth Amendment. In *Lopez v. City of Chicago*, 464 F.3d 711, 719 (7th Cir. 2006), the Seventh Circuit explained that "the Fourth Amendment governs the period of confinement between arrest without a warrant and the preliminary hearing at which a determination of probable cause is made, while due process regulates the period of confinement after the initial determination of probable cause." (quoting *Villanova v. Abrams*, 972 F.2d 792, 797 (7th Cir. 1992)). The Court takes judicial notice of the chronological case summary in *State v. Stewart*, 41D03-1906-CM-000579, available at mycase.in.gov, which reflects that probable cause was found after Stewart's arrest on June 26, 2019. That is the same day the fight in the Jail occurred and, construing the evidence in Stewart's

favor, is the earliest date at which his boot and crutches were confiscated.  Further, there is no evidence that Matron Hamilton was aware of Stewart's medical issues before June 28, 2019, when she responded to his grievance.  (Dkt. 70-3 at 1.)  Thus, the Fourteenth Amendment, rather than the Fourth Amendment, governs Stewart's claims against Matron Hamilton.

A pretrial detainee's medical care claim brought under the Due Process Clause of the Fourteenth Amendment is subject only to the objective unreasonableness inquiry identified in *Kingsley v. Hendrickson*, 135 S. Ct. 2466 (2015), rather than the deliberate indifference standard used for convicted prisoners. *Miranda v. County of Lake*, 900 F.3d 335, 352 (7th Cir. 2018).[8]  To survive summary judgment on a Fourteenth Amendment claim, Stewart must show:

> (1) there was an objectively serious medical need; (2) the defendant committed a volitional act concerning the [plaintiff's] medical need; (3) that act was objectively unreasonable under the circumstances in terms of responding to the [plaintiff's] medical need; and (4) the defendant act[ed] "purposefully, knowingly, or perhaps even recklessly" with respect to the risk of harm.

*Gonzalez v. McHenry County, Ill.*, 40 F.4th 824, 828 (7th Cir. 2022) (quoting *Miranda*, 900 F.3d at 353−54).

The parties do not dispute that Stewart's ankle injury was a serious medical condition, so the Court turns to whether Matron Hamilton's response to the injury was objectively unreasonable. The only evidence of their interactions consists of Matron Hamilton's affidavit, Stewart's affidavit, and the grievance correspondence between her and Stewart. The following table summarizes their interactions:

| Grievance Date | Summary of Grievance | Response Date | Summary of Response |
|---|---|---|---|
| 6/26 | Officers denied request for medical to address leg | 6/28 | Referred to medical and seen that day |

---

[8] Johnson County Defendants incorrectly state that the standard is the same under the Eighth Amendment and Fourteenth Amendment, citing to cases that predate *Kingsley*. Dkt. 69 at 19. Mr. Stewart's counsel did not correct this misstatement of the standard, as he cited no caselaw in his discussion of Matron Stewart's individual liability. Dkt. 70 at 11−12. The Court expects more of the attorneys appearing in this Court.

| 7/11 | Mostly illegible but concerning 6/26 incident | 7/12 | Forwarded to medical because "only doctor can order" care |
| 7/20 | Requested boot and to be placed in medical block | 7/24 | Directed to see medical |
| 7/25 | States taking boot off and putting him in open population is negligent | 7/26 | Forwarded this and prior grievance because only medical can order walking boot. Noted that inmates with medical needs are housed in HD-tanks or administrative segregation |
| 7/28 | States being on second floor without boot or crutches is punishment | 8/2 | According to her records, he is back in HD-tank |
| 7/30 | Requests boot and crutches and medical records | 8/2 | Request for medical care must be made with medical provider, and can review records |

(*See generally*, Dkt. 70-3; Dkt. 68-4 at 16.)

No reasonable juror could conclude that Matron Hamilton's responses to Stewart's grievances were objectively unreasonable given the totality of the circumstances. Courts have "'long recognized' that correctional institutions typically 'engage in the division of labor' between medical professionals and other security and administrative staff." *McGee v. Parsano*, 55 F.4th 563, 569 (7th Cir. 2022) (quoting *Miranda*, 900 F.3d at 343). Thus, if a detainee is receiving care by medical staff, non-medical jail staff may defer to their medical judgment unless the "jail official 'had reason to know that the[ ] medical staff w[as] failing to treat or inadequately treating an inmate." *Id.* (quoting *Miranda*, 900 F.3d at 343). As Matron Hamilton repeatedly explained to Stewart, the decision as to whether he required a medical boot or crutches was one that must be made by medical staff. (Dkt. 70-3; Dkt. 68-4 at 2−3, ¶¶ 12−13.) Stewart's grievances never indicated that it was Jail staff rather than medical staff that removed his medical equipment. Stewart saw medical staff on several occasions, so Matron Hamilton had no reason to doubt that he was under their care. (Dkt. 68-4 at 4−10.) And although Stewart testified that he was without his boot and crutches as of June 26, 2019, the first time he notified Matron Hamilton that he was

without needed medical equipment was July 20, 2019 (which is consistent with the medical records that show Dr. Lloyd discontinued his boot and bandage on July 17, 2019, *see* Dkt. 68-4 at 9). (Dkt. 70-3.) Thus, Matron Hamilton's deference to medical staff was reasonable under the circumstances.

There was one area that Matron Hamilton may have had control over:  Stewart's cell placement. A juror might conclude that it was objectively unreasonable to put an inmate with a healing ankle injury on the second floor of the Jail where he would have to navigate staircases without medical equipment.  But Stewart points to no evidence that Matron Hamilton failed to address this issue. His July 25, 2019 grievance complained only of being in general population. (Dkt. 70-3 at 4.) His July 28, 2019 grievance was the first that addressed the stair issue.  (Dkt. 68-4 at 16.) Matron Hamilton responded on August 2, 2019 by saying that according to the Jail's records, Stewart was back in an area on the first floor.  *Id.*  This may not have been factually correct; Stewart's encounter with a jail nurse on August 5, 2019 indicated that he remained on the second floor in administrative segregation. *Id.* at 10. But Stewart did not file another grievance informing Matron Hamilton that her records were wrong.  Thus, there is no evidence that she acted purposefully or knowingly with respect to his continued placement on the second floor.  *Gonzalez*, 40 F.4th at 828.

Because no reasonable juror could conclude that Matron Hamilton violated Stewart's Fourteenth Amendment rights, summary judgment must be **granted** in her favor.

## B.    *Monell* **Claims against Johnson County**

Stewart's remaining constitutional claims proceed under the theory of liability outlined in *Monell v. Dept. of Social Services*, 436 U.S. 658 (1978).  "*Monell* liability is rare and difficult to establish."  *Stockton v. Milwaukee County*, 44 F.4th 605, 617 (7th Cir. 2022).  Stewart raises two *Monell* claims: (1) that Johnson County's practice or custom of confiscating necessary medical

equipment violated his rights; and (2) that Johnson County failed to adequately train its staff to

deal with inmates' medical needs.

To prevail on a claim against Johnson County, Stewart must first show that he was deprived

of a federal right, and then he must show that the deprivation was caused by a Johnson County

custom or policy or failure to implement a needed policy. *Dean v. Wexford Health Sources, Inc.*,

18 F.4th 214, 235 (7th Cir. 2021). As the Seventh Circuit has explained:

> There are at least three types of municipal action that may give rise to municipal
> liability under § 1983: (1) an express policy that causes a constitutional deprivation
> when enforced; (2) a widespread practice that is so permanent and well-settled that
> it constitutes a custom or practice; or (3) an allegation that the constitutional injury
> was caused by a person with final policymaking authority. Inaction, too, can give
> rise to liability in some instances if it reflects a conscious decision not to
> take action.

*Id*. Johnson County cannot be held liable under the common-law theory of *respondeat* superior

for its employees' actions. *Howell v. Wexford Health Sources, Inc.*, 987 F.3d 647, 653 (7th Cir.

2021). Further, although Stewart's individual liability claims are analyzed under the Due Process

Clause of the Fourteenth Amendment, *Monell* liability only attaches if the municipality acted with

deliberate indifference. *J.K.J. v. Polk County*, 960 F.3d 367, 377 (7th Cir. 2020); *Board of County*

*Comm'rs of Bryan County, Okl. v. Brown*, 520 U.S. 397, 407 (1997); *see also Miranda*, 900 F.3d

at 345, 352 (applying deliberate indifference standard to pretrial detainee's *Monell* claim despite

disavowing that standard for pretrial detainee's claims against individual defendants).

Stewart acknowledges that because Johnson County does not have an explicit policy about

medical equipment, he is alleging a practice or custom claim under category two. (Dkt. 70 at 8.)

A "pivotal requirement" for this type of claim is a showing of widespread constitutional violations.

*See Hildreth v. Butler*, 960 F.3d 420, 426 (7th Cir. 2020); *see also Stockton*, 44 F.4th at 617 ("To

establish deliberate indifference to the purportedly unconstitutional effects of a widespread

practice, [the plaintiff] must point to other inmates injured by that practice."). While it is not

15

"impossible" for a plaintiff to demonstrate a widespread practice or custom with evidence limited to personal experience, "it is necessarily more difficult . . . because 'what is needed is evidence that there is a true municipal policy at issue, not a random event.'" *Hildreth*, 960 F.3d at 426–27 (quoting *Calhoun v. Ramsey*, 408 F.3d 375, 380 (7th Cir. 2005)). "If a municipality's action is not facially unconstitutional, the plaintiff 'must prove that it was obvious that the municipality's action would lead to constitutional violations and that the municipality consciously disregarded those consequences." *Dean*, 18 F.4th at 235. "[C]*onsiderably more proof than the single incident will be necessary in every case* to establish both the requisite fault on the part of the municipality, and the causal connection between the policy and the constitutional deprivation." *Id.* (cleaned up) (emphasis in *Dean*).

The only evidence Stewart has submitted in support of this claim is his testimony that unnamed Jail officers confiscated his boot and crutches after the fight because these items are only allowed in the medical unit, and that officers confiscated his ACE bandage while he was in administrative segregation because it was contraband. These two incidents are not enough to support *Monell* liability. There is no evidence that Jail officials confiscated needed medical equipment from other inmates. *Stockton*, 44 F.4th at 617. The undisputed evidence shows that this practice was not widespread even as it related to Stewart. He was allowed to have his equipment while in general population. (Dkt. 68-2 at 5–6 (49–50); 11 (57).) In his medical notes, a nurse observed him walking with his boot on June 28, 2019, two days after he alleged it was confiscated. (Dkt. 68-4 at 5.) In every response to his grievances, Matron Hamilton told Stewart that any decision related to a medical boot or other medical need had to be made by medical staff. (Dkt. 70-3.)

At most, Stewart has produced some evidence that unnamed officers acted unreasonably by confiscating his medical equipment on two occasions. But Johnson County cannot be held

responsible for the unconstitutional acts of its employees absent a showing of a widespread custom. *Howell*, 987 F.3d at 653.  Thus, Johnson County is entitled to summary judgment with respect to Stewart's medical equipment claim.

Stewart's failure-to-train claim fares no better.   "A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Connick v. Thompson*, 563 U.S. 51, 61 (2011).  To survive summary judgment, Stewart must provide evidence of a "pattern of similar constitutional violations" or show that the decision not to train Jail staff with respect to inmates with medical needs similar to Stewart's created an obvious risk that a constitutional violation would occur. *Id.* at 62–63 (citing *City of Canton v. Harris*, 489 U.S. 378, 390, n.10 (1989)).  In other words, absent a pattern, "a single incident can be enough for liability [only] where a constitutional violation was highly foreseeable." *Miranda*, 900 F.3d at 344.

As discussed, there is no evidence of a pattern of unconstitutional conduct regarding inmates with medical equipment.  And Stewart has not argued that it was highly foreseeable that the failure to train Jail staff about this issue would result in a constitutional violation. *See* Dkt. 70 at 9 (arguing only that Stewart testified that officers took his boots and crutches, the doctor provided only an ACE bandage based on Stewart's speculation that his "hands were tied" to do more, and Johnson County failed to provide any Standard Operating Procedure addressing the proper handling of inmates with medical equipment); *see Mwangangi v. Nielsen*, 48 F.4th 816, 829 (7th Cir. 2022) (noting that under principle of party presentation, parties represented by competent counsel are responsible for advancing the facts and arguments entitling them to relief). Johnson County is entitled to summary judgment on the failure-to-train claim.

Because the Johnson County Defendants are entitled to summary judgment on all constitutional claims, ACH's Motion for Summary Judgment against Johnson County with respect to liability for any constitutional violation is **denied as moot**.

17

C.    **Remaining State Law Claims**

The only remaining claims are Stewart's negligence claims against Johnson County, and Johnson County's third-party indemnification and negligence claims against ACH.  The Court must determine whether it is appropriate to exercise supplemental jurisdiction over these state-law claims pursuant to 28 U.S.C. § 1367.  For the reasons that follow, the Court relinquishes supplemental jurisdiction over these claims and dismisses them without prejudice.

The Court ultimately has discretion whether to exercise supplemental jurisdiction over a plaintiff's state-law claims.  *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009); *see* 28 U.S.C. § 1367(c) ("The district courts may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction . . . .").  When deciding whether to exercise supplemental jurisdiction, "'a federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity.'"  *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 173 (1997) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988)).

The Seventh Circuit has made clear that "the usual practice is to dismiss without prejudice state supplemental claims whenever all federal claims have been dismissed prior to trial."  *Groce v. Eli Lilly*, 193 F.3d 496, 501 (7th Cir. 1999); *see Sharp Electronics Corp. v. Metropolitan Life Ins. Co.*, 578 F.3d 505, 514 (7th Cir. 2009) ("Normally, when all federal claims are dismissed before trial, the district court should relinquish jurisdiction over pendent state-law claims rather than resolving them on the merits.") (citation and quotation marks omitted).  Exceptions to the general rule exist: "(1) when the statute of limitations has run on the pendent claim, precluding the filing of a separate suit in state court; (2) substantial judicial resources have already been committed, so that sending the case to another court will cause a substantial duplication of effort; or (3) when it is absolutely clear how the pendent claims can be decided."  *Davis v. Cook Cnty.*,

18

534 F.3d 650, 654 (7th Cir. 2008) (quoting *Wright v. Associated Ins. Companies Inc.*, 29 F.3d 1244, 1251 (7th Cir. 1994)) (internal quotation marks omitted).

The relevant factors weigh in favor of the Court following the "usual practice" in the Seventh Circuit and relinquishing supplemental jurisdiction. *Groce*, 193 F.3d at 501. The statute of limitations will not have run on Stewart's state-law claims, as both federal and state law toll the relevant limitations period when claims are pending in a civil action (except in limited circumstances absent here). *See* 28 U.S.C. § 1367(d); Ind. Code § 34-11-8-1; *see also Hemenway v. Peabody Coal Co.*, 159 F.3d 255, 266 (7th Cir. 1998). The Court has not expended significant resources on the pending state-law claims. And the Court expects that the parties' efforts with respect to those claims in discovery and briefing will be repurposed in a state-court proceeding. Finally, as always, comity favors allowing state courts to decide issues of state law.

For these reasons, the Court exercises its discretion to relinquish supplemental jurisdiction over the remaining state-law claims. Accordingly, ACH's Motion for Summary Judgment is **denied without prejudice**.

### V.   <u>ORDER TO SHOW CAUSE</u>

In support of their argument that Stewart suffered no constitutional injury and was not negligent due to the actions of Matron Hamilton or other Jail staff, the Johnson County Defendants presented evidence that one of the screws in Stewart's ankle was broken before his admission into the Jail. (Dkt. 94 at 11.) Stewart disputed the accuracy of this record, attesting, "Prior to my incarceration, I had never been told that the hardware in my ankle had failed." (Dkt. 70-2 at 3 ¶¶ 23−24.) Putting aside that his lack of knowledge about this information does not call into question the accuracy of a non-defendant's medical records, the Court has reason to believe that Stewart willfully lied.

19

Stewart submitted an exhibit consisting of his grievances to Matron Hamilton in support of his claims against her and Johnson County. (Dkt. 70-3.) But he omitted one. In that grievance, submitted by the Johnson County Defendants, Stewart specifically mentions "broken screws" (Dkt. 68-4 at 16).

Under Federal Rule of Civil Procedure 11(b), "[b]y presenting to the court a written pleading, written motion, or other paper . . . an attorney . . . certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances . . . [that] the factual contentions have evidentiary support[.]" Stewart seemingly omitted the grievance that showed his knowledge of a broken screw hoping that this Court would not "take the time to check the record. Litigants who take this approach often . . . find that they have misjudged the court." *Malin v. Hospira, Inc.*, 762 F.3d 552, 564 (7th Cir. 2014). And omitting this evidence while presenting a signed declaration disavowing knowledge of a broken screw runs afoul of counsel's Rule 11 obligations and his obligations under Rule 3.3(a) of the Indiana Rules of Professional Conduct, which states that "[a] lawyer shall not knowingly . . . (1) make a false statement of fact . . . to a tribunal or fail to correct a false statement of material fact . . . . previously made to the tribunal by the lawyer." Notably, the incomplete grievance exhibit and Stewart's declaration were submitted *after* Johnson County had already submitted an exhibit with the grievance mentioning the screw.

"A district court has inherent power to sanction a party who has willfully abused the judicial process or otherwise conducted litigation in bad faith." *Secrease v. Western & Southern Life Ins. Co.*, 800 F.3d 397, 402 (7th Cir. 2015). Stewart and his counsel, Paul Cummings, have **through Monday, May 22, 2023**, to show cause, in writing, why they should not be sanctioned for presenting false statements in opposing the Johnson County Defendants' Motion for Summary Judgment.

## VI. <u>CONCLUSION</u>

Johnson County and Matron Hamilton's Motion for Summary Judgment, Dkt. [67], is

**GRANTED** as to all federal claims, and the Court relinquishes supplemental jurisdiction over the

remaining state claims.  Advanced Correctional Healthcare, Inc.'s Motion for Summary Judgment,

Dkt. [65], is **DENIED as moot** as to its liability with respect to the federal claims and **DENIED**

**without prejudice** as to the state claims. Johnson County's Motion to Limit Expert Testimony,

Dkt. [88], is **DENIED as moot**.  All pretrial and trial deadlines are **VACATED**.

Final judgment will issue in a separate entry.

Stewart and his counsel, Paul Cummings, have **through Monday, May 22, 2023**, to show

cause, in writing, why they should not be sanctioned for presenting false statements in opposing

the Johnson County Defendants' Motion for Summary Judgment.

**SO ORDERED.**

Date: 5/8/2023

Hon. Tanya Walton Pratt, Chief Judge
United States District Court
Southern District of Indiana

DISTRIBUTION:

Paul J. Cummings
HENN HAWORTH CUMMINGS & PAGE
paul.cummings@HHCPlaw.com

Daniel Joseph Layden
WILLIAMS BARRETT & WILKOWSKI, LLP
dlayden@wbwlawyers.com

Jacob Garrett Bowman
WILLIAMS BARRETT & WILKOWSKI, LLP
jbowman@wbwlawyers.com

William W. Barrett
WILLIAMS BARRETT & WILKOWSKI, LLP
wbarrett@wbwlawyers.com

Carol A. Dillon
BLEEKE DILLON CRANDALL, P.C.
carol@bleekedilloncrandall.com